Magistrate Judge Michelle L. Peterson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

GARRET ARTHUR LENGYEL,

Defendant.

CASE NO.   MJ24-672

COMPLAINT for VIOLATION

BEFORE Michelle L. Peterson, United States Magistrate Judge, U.S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE

### Distribution of a Controlled Substance

On or around late July 2024, in Snohomish County, within the Western District of Washington, GARRET ARTHUR LENGYEL did knowingly and intentionally distribute a controlled substance, including a mixture or substance containing a detectable amount of methamphetamine, a substance controlled under Title 21, United States Code.

Complaint - 1
*United States v. Garret Arthur Lengyel*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

All in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(C).

## COUNT TWO

### Distribution of a Controlled Substance

On or around late July 2024, at Snohomish County, within the Western District of Washington, GARRET ARTHUR LENGYEL did knowingly and intentionally distribute a controlled substance, N-phenyl-N- [ 1- (2-phenylethyl ) -4-piperidinyl ] propanamide (fentanyl), a substance controlled under Title 21, United States Code.

Further, the offense involved 40 grams or more of a mixture or substance containing fentanyl.

All in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(B).

And the complainant states that this Complaint is based on the following information:

I, ATF SA Brandon Brashares, being first duly sworn on oath, depose and say:

### *Affiant Background and Qualifications*

1.        I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.        I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since late October 2023.  I am currently assigned to the Seattle Field Office, in Seattle, Washington, within the ATF Violent Crime Task Force.  In that capacity, I enforce federal criminal laws relating to the use, possession, and trafficking of firearms as well as narcotics trafficking violations.  Prior to my employment with the ATF, I served as a Deputy Sheriff and Detective with the Snohomish County Sheriff's Office in

Complaint - 2
*United States v. Garret Arthur Lengyel*

Washington State, from October 2016 until October 2023. I attended the Washington State Basic Law Enforcement Academy, which I successfully passed and became a sworn Washington State Peace Officer. Later, I received formal training from the Federal Law Enforcement Training Center in Glynco, Georgia, Criminal Investigators Training Program, which familiarized me with basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition, I successfully completed a fourteen-week ATF Special Agent Basic Training course in Glynco, Georgia, which included comprehensive, formalized instruction in, among other things: firearms identification, firearms trafficking, arson and explosives, and tobacco and alcohol diversion.

3. During my professional training and experience, I have both assisted in and conducted investigations into firearms and narcotic violations, including investigations involving counterfeit M-30 pills believed to contain fentanyl as well as methamphetamine. I have written, been granted, and executed numerous state level search warrants regarding the Violation of the Uniform Controlled Substance Act, as well as unlawful possession of firearms violations. I have also participated in undercover operations, and operations involving confidential informants (CI's). During the execution of search warrants, I have participated in the recovery of evidence related to firearms and narcotic violations. Through my training and experience and based upon the experience of other Special Agents and sworn state law enforcement officers which has been relayed to me, I have become familiar with the modus operandi of narcotic dealers and narcotic traffickers and illegal possessors of firearms and ammunition as enumerated herein.

4. This affidavit is made based upon my personal knowledge, training, experience, and investigation, as well as upon information provided to me and my review of reports prepared by other law enforcement personnel. This affidavit is made for the

Complaint - 3
*United States v. Garret Arthur Lengyel*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

purpose of establishing probable cause for this Warrant and thus does not include each and every fact known to me concerning this investigation.

5.    During this investigation, I listened to, and reviewed, an audio conversation captured by an ATF Confidential Informant (CI). At the direction of ATF Special Agents, the CI covertly recorded a conversation related to the trafficking of pills believed to contain fentanyl (commonly referred to as M30 pills) and methamphetamine as well as a conversation regarding a possible narcotics transaction for a pistol silencer, at the **Subject Premises**. I know through my training and experience, including my experience with this investigation, that individuals involved in the distribution of controlled substances and other criminal activity often use coded words, street terms and inferences when referring to their illegal activity.  I have used my training and experience, as well as information provided by former confidential sources as well as street level drug users/purchasers that I have contacted in the past to include what I believe to be an accurate translation of these coded words, street terms and phrases.  I have also included summaries of the pertinent portions of the recorded conversation between the CI and the suspect of the investigation.

6.    When providing summaries of calls, text messages, events, and surveillance observations/operations, all the times listed are approximate.

7.    This Affidavit does not contain every fact known to me or learned during the course of this investigation. Instead, I have set forth only the facts that I believe are essential to establish probable cause of the charges in Count One and Count Two.

## PROBABLE CAUSE

8.    On July 9th, 2024, I, ATF SA Brashares, received a phone call from Tulalip Police Department Officer Carrington regarding a possible confidential informant. Officer Carrington advised me that this possible informant could likely purchase narcotics and firearms from a known convicted felon, Garret LENGYEL, the target of this investigation, in the Marysville, WA., area.

Complaint - 4
*United States v. Garret Arthur Lengyel*

### *Controlled Purchase of Narcotics (Late July 2024)*

9.      In late July 2024, at the direction of myself and SA Arnold, a Confidential Informant (CI)[1] purchased approximately 32.2 grams of methamphetamine and approximately 51.8 grams of suspected fentanyl pills pressed into counterfeit M30 pills, from Garret LENGYEL for $700. The deal was conducted inside LENGYEL's residence located at 4527 123rd PL NE, Marysville, WA, in Snohomish County and the Western District of Washington. LENGYEL is the owner / taxpayer of the residence. The CI was searched before and after the deal with no contraband found beforehand and only the narcotics that were purchased afterwards. The CI explained LENGYEL was the only one in the residence and LENGYEL was the one who sold CI the narcotics. The methamphetamine was field tested, and the test resulted in a positive indication as methamphetamine. The presumed fentanyl pills were not field tested for safety and have been sent to the WSP Crime Lab in Marysville for testing. However, the fentanyl pills were later tested and confirmed as containing fentanyl.

10.      Based on my training and experience as well as my previous training and experience as a Snohomish County Sheriff's Office Deputy and Detective, I believe these pills to be counterfeit M30 Fentanyl pills. I have investigated numerous narcotics dealing cases during my previous tenure as a sworn Washington State Law Enforcement Officer and I have attended many different trainings and seminars regarding narcotics trafficking. First, in my training and experience, fentanyl is commonly trafficked in pressed pill form made to look similar to "M30" pills. Furthermore, the various colors and shades of the "M30" pills as well as the poor shape and condition the pills were in indicate these are counterfeit "M30" pills. These pills had approximately 4-5 different shades of light blue, blue and light greenish. Real Oxycodone M30 pills are all a consistent light blue color.

---

[1] The CI has seven felony convictions, including six related to possession of stolen property from 2001, one conviction for taking a motor vehicle without permission in 1995. The CI has convictions of 11 gross misdemeanors, including possession vehicle theft tools and theft in 2015, making false/misleading statements to public servant in 2010, another theft charge in 2009, assault four in 1996, and driving related offenses in 1996, 1998, 2004. Additionally, the CI has convictions for vandalism (2008), marijuana possession (2000), and a liquor violation from 1990. Furthermore, the CI signed up on a paid basis.

Complaint - 5
*United States v. Garret Arthur Lengyel*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11. The poor condition of these pills also indicates the pills are not real M30 pills, but counterfeit pills. The "M30" pills that were purchased from LENGYEL had nicks and cuts all over them. Some of the pills were even chipped and/or broken in half. The stamped/pressed numbers and letters also were not sharp like actual pharmaceutical grade pills. Normally, pharmaceutical grade Oxycodone M30 pills are produced professionally and keep clean, sharp imprint lines due to the professional process of manufacturing the pills to the FDA standard. I believe that these pills were not pharmaceutical grade and were likely pressed by a narcotics trafficker or drug trafficking organization. This is based on the inconsistent color, shape and overall physical appearance.



***Details of the Narcotics Transaction at 4527 123rd PL NE, Marysville, WA***

12. The interaction between the CI and LENGYEL was audio recorded, and later interviewed / debriefed regarding the transaction. When the CI knocked, it took a while for LENGYEL to open the door. Throughout the transaction, LENGYEL was arguing with his girlfriend on the phone. Much of the conversation between LENGYEL and his girlfriend is partially captured on the audio recording. Officers who are familiar with LENGYEL and his voice verified that the voice from the audio recording matches LENGYEL's voice. Much of the conversation was also shared by LENGYEL to the CI throughout the drug transaction.

13. While in the home, the CI indicated that he and LENGYEL were the only two people present, that LENGYEL provided him with methamphetamine and fentanyl

Complaint - 6
*United States v. Garret Arthur Lengyel*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in exchange for cash during the transaction, and that the CI recognized LENGYEL because of his familiarity with LENGYEL, and in no small part because LENGYEL is known to be missing multiple fingers from one hand.

14. The CI noted in the kitchen that there was cutting and mixing equipment that the CI believed was for fentanyl distribution.

15. Throughout the drug transaction, the CI was mostly on the couch, while LENGYEL continued to talk or use voice-to-text and texting features to communicate with his girlfriend, who sold a firearm silencer that LENGYEL wanted, to someone else. As discussed below, LENGYEL discussed how he was introducing his girlfriend to new drug purchasers and sellers, and how it was like a competition between them who could do better at selling drugs.

16. Near the couch, the drugs, and the drug transaction, LENGYEL had a pistol and "clip," or bullet magazine, on the table. The CI observed the firearm and magazine when he entered the home.

17. During the conversation between the CI and LENGYEL in LENGYEL's home, LENGYEL asked what the CI wanted. He replied, "shards and pills." I know that the term "shards" is a street term that refers to methamphetamine, and "pills" commonly refers to fentanyl. LENGYEL asked, "how much you got there," to which the CI replied, "7." I know that "7" meant $700. That amount is the amount that the CI was authorized to make a purchase with.

18. During the drug transaction, while in the house, LENGYEL begins talking to his girlfriend Stacy. LENGYEL can be heard talking and yelling at Stacy through the CI's audio recording device. LENGYEL then explained, to the CI, that Stacy had made ten "deals," which I believe refers to narcotics transactions, with ten separate people from the WinCo grocery store to other businesses close by. In contrast, LENGYEL had only met up with one person whom he knew since he was seventeen. LENGYEL continued explaining to the CI that he gives everyone good deals, and his friends even better deals – again, referring to narcotics transactions. LENGYEL then explained that he had "nice

Complaint - 7
*United States v. Garret Arthur Lengyel*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

chunky shards and pounds of them too," and he made more profit off that one deal than Stacey did from those ten individuals.

19.     LENGYEL continued, describing that Stacy tries to make selling drugs a competition, which – according to LENGYEL – she knows she will lose if she goes head up against him. He then explains that it "pisses him off" that Stacy has been selling "dope" for 15 years and that he, "steps back in and boop… step back into my old shoes and within a couple of months, I'm now introducing her to people." Based on my training and experience and my knowledge of this investigation, I understand this conversation to mean that LENGYEL is, in addition to selling drugs to his own customers, introducing Stacey to other individuals in his drug distribution network – buyers and sellers of narcotics.

20.     LENGYEL then read a text message from Stacy out loud, explaining that it looks like LENGYEL and her aren't talking because he will not allow her to come get "clear," another term that refers to methamphetamine. LENGYEL then said that Stacy wanted "speed," again a term for methamphetamine.

21.     Based on the above facts, I respectfully submit that there is probable cause to believe that GARRET ARTHUR LENGYEL knowingly and intentionally distribute a controlled substance, including a mixture or substance containing a detectable amount of methamphetamine, a substance controlled under Title 21, United States Code, in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(C).

22.     Further, I respectfully submit that there is probable cause to believe that GARRET ARTHUR LENGYEL did knowingly and intentionally distribute a controlled substance, including: fentanyl, a substance controlled under Title 21, United States Code, in quantities that involved 40 grams or more of a mixture or substance containing fentanyl, in violation of Title 18, United States Code Sections 841(a)(1) and 841(b)(1)(B).

Complaint - 8
*United States v. Garret Arthur Lengyel*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Brandon Brashares    Digitally signed by Brandon Brashares
Date: 2024.10.21 11:09:08 -07'00'

BRANDON BRASHARES,
Complainant
Special Agent, ATF Seattle

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this **22nd** day of October 2024.

MICHELLE L. PETERSON
United States Magistrate Judge

Complaint - 9
*United States v. Garret Arthur Lengyel*